# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 18-448V
### Filed: November 24, 2020

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | | |
| KEVIN RANDALL, | * | To Be Published |
| | * | |
| Petitioner, | * | |
| v. | * | Decision on Attorneys' Fees and Costs; |
| | * | Reasonable Basis; Denial |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * | | |

*Maximillian J. Muller, Esq.*, Muller Brazil, LLP, Dresher, PA, for petitioner.
*Julia Collison, Esq.*, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

**Roth**, Special Master:

On March 27, 2018, Kevin Randall ("Mr. Randall," or "petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program.[2] Petitioner alleged that he developed a Shoulder Injury Related to Vaccine Administration ("SIRVA") of his left arm as a result of receiving an influenza ("flu") vaccination on September 29, 2016. Petition ("Pet."), ECF No. 1. Petitioner dismissed his claim on January 13, 2020, stating that he would "be unable to prove that he is entitled to compensation under the Vaccine Program. Motion to Dismiss, ECF No. 31. Petitioner now seeks an award of attorneys' fees and costs. Petitioner has not established a reasonable basis for his claim; therefore, his motion is denied.

### I.     Background

### A.     Summary of Relevant Medical Records

---

[1] This Decision has been formally designated "to be published," which means it will be posted on the Court of Federal Claims's website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). **This means the Decision will be available to anyone with access to the internet.** However, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public. *Id*.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

1. **Petitioner's Medical History Prior to the Allegedly Causal Flu Vaccine**

Petitioner's past medical history is significant for fatty liver disease, hypertriglyceridemia, gastroesophageal reflux disease, allergic rhinitis, and trigger finger surgery on the fourth finger of his left hand. Pet. Ex. 2 at 46-47. Petitioner received hepatitis B and tetanus vaccinations in his left deltoid on June 6, 2016 and hepatitis A and B vaccinations in his left and right deltoids, respectively, on July 6, 2016, without event. Pet. Ex. 2 at 49, 57.

2. **Petitioner's Medical History at the Time of and After Receipt of the Allegedly Causal Flu Vaccine**

On September 29, 2016, petitioner received the allegedly causal flu vaccine in his right deltoid.[3] Pet. Ex. 2 at 45.

On October 7, 2016, petitioner received a hepatitis B vaccination in his right deltoid. Pet. Ex. 2 at 44.

On October 18, 2016, petitioner returned to his primary care physician, Dr. Kenney, reporting three weeks of left shoulder pain.[4] Pet. Ex. 2 at 41. Petitioner reported that prior to the onset of his shoulder pain, he "was doing upper body exercise with elliptical & weights." *Id*. He complained of a constant dull ache with intermittent sharp pain that radiated into the left side of his neck. *Id*. Dr. Kenney's assessment was a rotator cuff strain; she recommended physical therapy and ibuprofen. *Id*. at 43.

On October 24, 2016, petitioner presented to physical therapy reporting left shoulder pain for three to four weeks, "potentially from introduction of new strength training." Pet. Ex. 3 at 2. The record documented an onset date of September 25, 2016. *Id*.

At a November 16, 2016 visit with his cardiologist, petitioner reported exercising on an elliptical "without any functional limitations." Pet. Ex. 2 at 146. Petitioner denied any chest, jaw, arm, or back discomfort. *Id*.

At his November 23, 2016 physical therapy visit, petitioner's shoulder condition was improved and documented with 90% reduction in pain and improvement in function. Pet. Ex. 2 at 88-89.

On November 28, 2016, petitioner returned to Dr. Kenney for unrelated medical issues. Pet. Ex. 2 at 36-38. He did not mention any ongoing issues with his left shoulder pain.

In December 2016, petitioner began injections for allergies. *See* Pet. Ex. 2 at 118, 127. He received injections in both arms, three times a week. *Id*. at 125-127.

---

[3] Petitioner's claim was for an injury to his left arm; the medical record documents that petitioner received the flu vaccine in his right arm. Petitioner submitted that the medical record is wrong.

[4] This would place onset prior to the September 29, 2016 flu vaccine.

2

On January 12, 2017, petitioner received a hepatitis A vaccine in his left deltoid. Pet. Ex. 2 at 36.

Petitioner was discharged from physical therapy on January 24, 2017, having met all established objective and functional goals. Pet. Ex. 3 at 24; Pet. Ex. 2 at 87.

On February 6, 2017, petitioner presented to Dr. Panitch, a family medicine practitioner, reporting left shoulder pain that began in October 2016. Pet. Ex. 2 at 32. He did not attribute his pain to the flu vaccine and specifically denied a history of trauma. *Id*. He reported daily aching pain with occasional stabbing pain. *Id*. Dr. Panitch's assessment was left rotator cuff syndrome and rotator cuff tendonitis. *Id*. at 35. Petitioner received a lidocaine injection. *Id*. An x-ray was performed on February 8, 2017 which showed "mild broad-based spurring of the superior aspect of the distal clavicle." *Id*. at 74. In a note on February 14, 2017, Dr. Panitch recommended an orthopedist based on the results of petitioner's x-ray. *Id*. at 18-19.

On February 23, 2017, petitioner presented to Dr. Marcelli, an orthopedist, and reported left shoulder pain that began in either September or October 2016. He reported that it could have been caused by the flu vaccine. Pet. Ex. 2 at 122. He complained of limited function, with pain over the deltoid. He denied any neck pain, past trauma, or other joint pain. *Id*. Dr. Marcelli's assessment was a tear of the left rotator cuff. *Id*. at 123. An MRI was ordered and was performed on February 26, 2017. *Id*. at 72-73, 123. The MRI revealed a "high-grade partial thickness articular surface tear involving the supraspinatus insertion," "[c]ystic degenerative change of the superolateral humerus," and "[m]oderate hypertrophic change of the acromioclavicular joint." *Id*. at 72.

On March 1, 2017, petitioner consulted a chiropractor for neck pain and left shoulder rotator cuff tear. Pet. Ex. 2 at 116. Examination revealed loss of normal cervical lordosis "leading to advanced spinal decay," with no findings regarding his left shoulder. *Id*.

On March 9, 2017, petitioner returned Dr. Marcelli for a follow-up. Pet. Ex. 2 at 82-83. Dr. Marcelli recommended surgical arthroscopy to correct a tear of the left rotator cuff. *Id*.

On April 3, 2017, petitioner presented to Dr. Khanna, another orthopedist at Dr. Marcelli's practice, for evaluation of low back pain that had progressed over the years but recently worsened. Pet. Ex. 2 at 84. Dr. Khanna's assessment was lumbar degenerative disc disease, left lumbar radiculitis, displacement of lumbar intervertebral disc, lumbosacral facet arthropathy, and meralgia paresthetica of the left side. *Id*. at 85. Dr. Khanna recommended physical therapy. *Id*. Petitioner presented for a physical therapy evaluation on April 5, 2017. Pet. Ex. 7 at 7. He returned to Dr. Khanna on April 24, 2017, to review an MRI of his lumbar spine. Pet. Ex. 2 at 111. Dr. Khanna noted that the updated MRI showed "grade 2 spondylolysthesis L5 on S1 and associated L5 spondylolysis." *Id*. at 112. Dr. Khanna recommended medial branch blocks at L3, 4, and 5, and continued physical therapy. *Id*.

Petitioner returned to Dr. Marcelli on May 11, 2017, for a pre-operative appointment prior to arthroscopy of his shoulder scheduled for June 9, 2017. Pet. Ex. 2 at 108-09. Petitioner underwent surgery as scheduled on June 9, 2017. Dr. Marcelli noted post-operative diagnoses of

near full-thickness rotator cuff tear of the left shoulder, type 2 superior labrum anterior and posterior tear, and acromioclavicular joint arthritis. Pet. Ex. 4 at 3.

Petitioner presented to Dr. Marcelli for post-operative visits on June 12, 2017; June 22, 2017; and July 6, 2017. Pet. Ex. 2 at 99-104. At his third post-operative visit, petitioner reported feeling well; it was recommended that he start physical therapy. *Id*. at 99.

Petitioner continued to present to Dr. Marcelli for five follow-up visits on July 20, 2017; August 10, 2017; September 7, 2017; October 5, 2017; and November 9, 2017. Pet. Ex. 5 at 14-23. He reported attending physical therapy, which was helping with his recovery. *Id*. at 16, 18, 20, 22. At his November 9, 2017 visit, petitioner reported that he had finished physical therapy and was "back to most normal activity." *Id*. at 14. Shortly thereafter, he returned to physical therapy for his lower back pain. *Id*. at 2.

### B.    Procedural History

The petition was filed on March 27, 2018, along with petitioner's medical records and affidavit. *See* Petition, Petitioner's Exhibits ("Pet. Ex.") 1-6, ECF No. 1. The accompanying medical records included proof of vaccination in the right arm along with the medical records referenced in the medical history above. Pet. Ex. 1-6, ECF No. 1.

This matter was initially assigned to the Special Processing Unit ("SPU"). ECF Nos. 4-5.

An initial status conference was held on May 16, 2018 to discuss petitioner's alleged receipt and injury from a flu vaccine administered to his left shoulder noting that the vaccine record documented receipt of the vaccination in his right deltoid. Scheduling Order at 1, ECF No. 9. Petitioner was ordered to file additional medical records related to the administration of the allegedly causal flu vaccine, including evidence from petitioner's vaccine administrator corroborating petitioner's claim that he received the vaccination in his left shoulder, primary care records from the three years prior to his vaccination, complete orthopedic records, and "an affidavit addressing the vaccine administration and his report to his physical therapist that his injury potentially occurred from the introduction of new strength training." *Id*.

On July 13, 2018, petitioner filed additional medical records, including orthopedic records and the requested affidavit. Pet. Ex. 8-10, ECF No. 10. In his affidavit, petitioner affirmed that he always requested the flu vaccine in his left arm because he is right-handed. Pet. Ex. 10 at 1. He described an ache that progressed rather than diminished over several weeks after the flu vaccine on September 29, 2016 until he saw a doctor on October 18, 2016. Pet. Ex. 10 at 2. Petitioner addressed his October 24, 2016 physical therapy visit which recorded three to four weeks of left shoulder pain "potentially from introduction of new strength training." Petitioner affirmed this "is absolutely incorrect and was nothing more than a guess by the therapist without any factual support." He further affirmed that the therapist was wrong in documenting onset as September 25, 2016, "at no time did I give a date when the injury occurred as I didn't even know how I became injured." According to petitioner, the onset date of September 25, 2016, was "a complete guess by the therapist." Pet. Ex. 10 at 2-3; Pet. Ex. 2 at 41; Pet. Ex. 3 at 2. He further affirmed to having a letter which stated that the flu vaccine was given in his left arm, not his right. *Id*. at 1. No such letter was filed into the record.

4

On March 29, 2019, respondent filed his Rule 4(c) Report ("Resp. Rpt."), recommending against compensation. Resp. Rpt., ECF No. 18. Respondent wrote that there was not preponderant evidence that petitioner received the allegedly causal flu vaccine in his left arm, as the medical record documented that the vaccine was given in petitioner's right deltoid. *Id*. at 6. Respondent further wrote that petitioner initially attributed his left shoulder pain to his exercise program and did not connect his shoulder pain to his flu vaccination until four months after vaccination. *Id*. Moreover, petitioner did not meet the criteria for a Table SIRVA claim because he did not have an onset of pain within 48 hours of vaccination, his "imaging and surgical findings support[ed] degenerative pathology," and his pain was not limited to his left shoulder. *Id*. at 7.

This matter was reassigned to me on April 11, 2019. ECF Nos. 19-20.

On June 18, 2019, petitioner filed email correspondence between himself and a co-worker, James Gallagher. Petitioner wrote that he had a doctor's appointment scheduled for October 18, 2016, for his left shoulder, which had been "bothering" him for a "couple weeks or so." Pet. Ex. 11 at 2, ECF No. 21. Petitioner wrote he did not know why his shoulder was hurting, as he did not fall. *Id*. At a status conference that same day, the parties discussed discrepancies between petitioner's affidavits and the contemporaneous medical records regarding the onset of petitioner's shoulder pain. Scheduling Order at 1-2, ECF No. 22. It was noted that petitioner could not identify what caused his injury or when the pain first began, and respondent added that petitioner's shoulder imaging showed degenerative pathology. *Id*. at 2. Petitioner requested time to review the evidence and file a status report on how to proceed. *Id*.

On August 19, 2019, petitioner filed a witness affidavit from Raymond Curtis ("Mr. Curtis"), email correspondence between Mr. Curtis and petitioner, a letter from petitioner's primary care physician, Dr. Kenney, and an email from the COO of Strive Physical Therapy, Mark Muir. Pet. Ex. 12-15, ECF No. 24. In the email correspondence with Mr. Curtis, dated October 14, 2016, petitioner mentioned that he could not attend a meeting because of a doctor's appointment for his left shoulder. When Mr. Curtis asked what was wrong with petitioner's shoulder, petitioner wrote, "Not sure really, only thing out of the day to day was a flu shot in that shoulder end of September." Pet. Ex. 13 at 1. Mr. Curtis's affidavit confirmed the authenticity of the email correspondence filed. Pet. Ex. 12.

The letter from Dr. Kenney, dated May 23, 2018, stated that petitioner was seen on September 29, 2016 and was given a flu vaccine. She wrote, "Our records indicate that he was given the flu vaccine in his right arm. Mr. Randall states the record is incorrect, that he was given the vaccine in his left arm." Pet. Ex. 14.[5] The letter provides nothing more.

The email, dated June 13, 2018, from Mark Muir stated, "In discussing Mr. Randall's case and the physical therapy documentation, I indicated that since the therapist was under the impression Mr. Randall's onset of pain began 3-4 weeks prior, it is possible she chose the date of 9/25/16, as being four weeks prior to the initial consultation, which was put in the date of onset box." Pet. Ex. 15 at 1. A direct statement from the physical therapist was not filed.

---

[5] The document was filed as Petitioner's Exhibit 14, though the document itself is labelled as "Exhibit 19."

On September 16, 2019, petitioner filed a supplemental affidavit describing how he recently discovered the email correspondence with Mr. Curtis. He explained that the email was in his company's archive server and he had not previously thought to check on the server. He clarified that previously he had only checked what was available to him locally on his computer. Pet. Ex. 16, ECF No. 26.

On September 18, 2019, petitioner filed a status report ("Pet. S.R.") requesting a status conference "to discuss continued litigation." Pet. S.R. at 1, ECF No. 27. The status conference was held on November 13, 2019. Scheduling Order at 1-2, ECF No. 28. The witness affidavit from Mr. Curtis and the email correspondence between Mr. Curtis and petitioner were discussed. *Id*. at 1, citing Pet. Ex. 12-13. Both the letter from Dr. Kenney and the email from Mark Muir of Strive Physical Therapy were also discussed. *Id*., citing Pet. Ex. 14 and Pet. Ex. 15. The limited weight of the new conflicting evidence was discussed. *Id*. at 2. Petitioner's counsel acknowledged "significant difficulties" in this case and requested time to determine how to proceed. *Id*.

Subsequently, on January 13, 2020, petitioner filed a motion to dismiss his claim, stating that "[a]n investigation of the supporting facts and science has demonstrated to petitioner that he will be unable to prove that he is entitled to compensation" and "to proceed further would be unreasonable and would waste the resources of the Court, the respondent and the Vaccine Program." Pet. Mot. for Decision Dismissing at 1, ECF No. 31. Petitioner's claim was accordingly dismissed the following day. Decision, ECF No. 32.

On February 18, 2020, petitioner filed a Motion for Attorneys' Fees and Costs. Motion for Fees, ECF No. 36. Petitioner requests attorneys' fees in the amount of $12,361.40 and attorneys' costs in the amount of $879.12, for a total amount of $13,240.52. *Id*. at 2. In accordance with General Order #9, petitioner's counsel represents that petitioner did not incur any out-of-pocket expenses. *Id*.

On February 27, 2020 respondent filed a response to petitioner's Motion for Fees. Response, ECF No. 37. Respondent "defer[red] to the Special Master to determine whether, under the facts of this case, the statutory requirements for an award of attorneys' fees and costs (including the reasonable basis requirement) have been met." *Id*. at 3.

On May 29, 2020, an Order was issued for petitioner to file a supplement to his Motion for Fees explaining the reasonable basis for his claim. Order, ECF No. 38. On July 28, 2020, petitioner filed a supplemental brief. Supp. Brief, ECF No. 39. Petitioner stated that the vaccine was given in his left arm and that "incorrect vaccine administration records are not typically a deciding factor in case evaluation." *Id*. at 5. Petitioner argued that he was "not initially certain what caused the shoulder injury" but ultimately in February of 2017 attributed his pain to the vaccination. *Id*. Petitioner cited multiple SIRVA cases that resulted in compensation or settlement in which petitioners did not complain of arm pain until several months after vaccination. *Id*. at 6-7.

The supplemental brief further provided, "counsel does not intentionally file meritless cases," explaining that petitioner's counsel employs a "stringent screening process" prior to filing cases. Supp. Brief at 8, ECF No. 39. Lastly, petitioner mentioned policy considerations to support an award for attorney's fees and costs, such as ensuring an adequate bar to represent potential petitioners. *Id*. at 8-9.

On October 28, 2020 an Order was issued for respondent to file a response to petitioner's Motion for Fees, specifically addressing reasonable basis. Order, ECF. No. 40. Respondent filed a Response to petitioner's Supplemental Brief on November 12, 2020. Response to Supp. Brief, ECF No. 41. Respondent submitted that petitioner "did not file more than a scintilla of objective evidence in support of causation." *Id.* at 5. Specifically, respondent noted that petitioner's medical records show vaccination in the opposite arm, petitioner's pain did not occur with 48 hours and was never characterized as immediate even when reported, petitioner's pain was not limited to the shoulder as petitioner reported neck pain, and testing showed no evidence of bursitis. *Id.* at 6-7. Respondent further asserted, "the only evidence petitioner set forth in support of his Table SIRVA claim are his own statements, which are not objective evidence." Finally, respondent addressed the cases cited by petitioner as "distinguishable and irrelevant"— "petitioner cites to a number of cases where the court ruled on a factual matter, e.g. the site of vaccination or onset of injury. No such ruling was made here." *Id.* at 8. Respondent submitted that the case lacked reasonable basis when filed, and one was never established. *Id.*

On November 18, 2020, petitioner filed a Reply to respondent's response. Reply, ECF No. 42. Petitioner again reiterated that he filed evidence showing that "(1) he had no prior history of shoulder injury; (2) his initial visit placed the onset of symptoms around the time of vaccination; (3) he was diagnosed with a SIRVA-like injury with pain and reduced range of motion limited to the shoulder area in which he alleged the vaccine was administered; and (4) no other condition or abnormality would explain his symptoms." *Id.* at 3. Petitioner argued that "Respondent is asking this Court to raise the reasonable basis standard to the preponderant standard in finding that Petitioner did not have a reasonable basis to file his claim." *Id.* He acknowledged that the case was filed with "issues requiring litigation, including an incorrect vaccination record," but argued that those issues "are irrelevant to reasonable basis at the time of filing." *Id.*

This matter is now ripe for consideration.

## II. Applicable Law

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 15(e)(1). If a petition results in compensation, petitioner is entitled to reasonable attorneys' fees and costs ("fees" or "fee award"). *Id.*; *see Sebelius v. Cloer*, 133 S. Ct. 1886, 1891 (2013). Where a petitioner does not prevail on entitlement, a special master has discretion to award reasonable fees if the petition was brought in "good faith" and with a "reasonable basis" for the claim to proceed. § 15(e)(1). A petitioner's good faith is presumed "in the absence of direct evidence of bad faith." *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996). Where no evidence of bad faith exists and respondent does not challenge petitioner's good faith, good faith requires no further analysis.

Reasonable basis is an objective inquiry, irrespective of counsel's conduct or looming statute of limitations, that evaluates the sufficiency of petitioner's available medical records at the time a claim is filed. *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017); *see Turpin v. Sec'y of Health & Human Servs.*, No. 99-564, 2005 WL 1026714 at *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005). A special master's evaluation of reasonable basis is to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted

7

with sufficient objective evidence to make a feasible claim for recovery. *Santacroce v. Sec'y of Health & Human Servs.*, No. 15-555V, 2018 WL 405121 at *7 (Fed. Cl. 2018). Reasonable basis is satisfied when available objective evidence, such as medical records or medical opinions, support a feasible claim prior to filing. *See Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 286 (2014) (citing *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 303, 303 (2011)); s*ee Silva v. Sec'y of Health & Hum. Servs*., 108 Fed. Cl. 401, 405 (2012). Where causation is a necessary element to petitioner's claim, petitioner must provide some objective support of a causal relationship between administration of the vaccine and the petitioner's injuries in order to establish that a claim was feasible. *See Bekiaris v. Sec'y of Health & Human Servs.*, 140 Fed. Cl. 108, 114 (2018).

Determination of feasibility is limited to the objective evidence submitted, *Santacroce*, 2018 WL 405121 at *7, but a special master is not precluded from considering objective factors such as "the factual basis of the claim, the novelty of the vaccine, and the novelty of the theory of causation."*Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 289 (2018). In *Cottingham*, the Federal Circuit expressly clarified that special masters are permitted to utilize a totality of the circumstances inquiry in evaluating reasonable basis, including, but not exclusively limited to, objective factors such as those identified in *Amankwaa*. *See Cottingham ex. rel. K.C. v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020). The Court reiterated that counsel conduct is subjective evidence, not to be considered when evaluating reasonable basis. *Cottingham*, 971 F.3d at 1345.

While incomplete records do not strictly prohibit a finding of reasonable basis, *Chuisano*, 116 Fed. Cl. At 288, an overwhelming lack of objective evidence will not support reasonable basis. *See Simmons,* 875 F.3d at 634-36 (holding that reasonable basis was not satisfied where 1) petitioner's medical record lacked proof of vaccination and diagnosis and 2) petitioner disappeared for two years prior to filing a claim). Additionally, a petitioner's own statements are not "objective" for purposes of evaluating reasonable basis and cannot alone support reasonable basis. *See, e.g., Chuisano*, 116 Fed. Cl. at 291; *Foster v. Sec'y of Health & Human Servs.*, No. 16-1714V, 2018 WL 774090, at *3 (Fed. Cl. Spec. Mstr. Jan. 2, 2018). A claim may lose reasonable basis as it progresses, if further evidence is unsupportive of petitioner's claim. *See R.K. v. Sec'y of Health & Hum. Servs.,* 760 F. App'x 1010, 1012 (Fed. Cir. 2019) (citing *Perreira v. Sec'y of Health & Hum. Servs.,* 33 F.3d 1375, 1376-77 (Fed. Cir. 1994)).

Despite broad discretion, a special master may not abuse their discretion in denying reasonable basis and fees. The Federal Circuit articulated, "failure to consider objective evidence presented in support of a reasonable basis for a claim would constitute an abuse of discretion" by the special master. *Cottingham*, 971 F.3d at 1345. The petitioner in *Cottingham* submitted an affidavit, a vaccine package insert, and several medical records showing that petitioner suffered adverse reactions listed on the package insert after receiving the vaccine. *See id.* at 1345-46. The Court found that the materials constituted such objective evidence that denying reasonable basis because of "no evidence" was clearly erroneous. *Id.* at 1346-47. The Court reminded that the burden of proof required for reasonable basis is not as high as that required for causation— "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Id.* at 1346. However, the Court held that the special master may make factual determinations as to the weight of evidence. *Id.* at 1347.

### III. Analysis

Here, because petitioner is afforded a good faith presumption and respondent does not challenge such presumption, good faith will not be further discussed. Additionally, as outlined by the Federal Circuit, subjective evidence is not to be considered when evaluating reasonable basis. Therefore, neither petitioner's counsel's conduct in vetting cases nor the policy arguments for awarding fees will be discussed.

In order to determine whether there was a reasonable basis for this claim, an analysis of the record is required. Petitioner alleged a Table injury and thus need not provide evidence of a causal relationship in establishing reasonable basis. However, the Vaccine Injury Table states that a vaccine must meet certain criteria for a SIRVA to be considered a Table injury. *See* 42 C.F.R. § 100.3(a)(XIV)(B). The Qualifications and Aids to Interpretation require: "(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection; (ii) Pain occurs within the specified time-frame [of 48 hours]; (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and (iv) No other condition or abnormality is present that would explain the patient's symptoms." 42 C.F.R. § 100.3(c)(10)(i-iv).

Though petitioner need not show high likelihood of success to establish that there was a reasonable basis for his filing, petitioner must have asserted the SIRVA elements with sufficient objective evidence to show a feasible claim. In this instance, petitioner faced significant defects in establishing reasonable basis for filing his claim. Petitioner's vaccination records document administration of the allegedly causal vaccine in his right arm though petitioner alleged a SIRVA of his left arm. Petitioner's records also do not provide evidence of the remaining SIRVA elements. In total, the undersigned finds that no objective evidence established a reasonable basis for the filing of petitioner's claim.

### A.   Petitioner Lacked Proof of Vaccination in his Left Shoulder

Petitioner alleged a SIRVA of his left shoulder. However, petitioner's vaccine record documents administration of the alleged flu vaccine in his right deltoid. While petitioner affirmed that the vaccine was administered in his left shoulder, the materials submitted by petitioner do not support administration of the September 29, 2016 flu vaccination in his left shoulder. The lack of objective evidence of vaccination in the allegedly affected arm erodes the feasibility of petitioner's claim and did so prior to the filing of the petition.

Petitioner asserted that incorrect vaccination records "are not typically a deciding factor in case evaluation,"[6] and "are irrelevant to reasonable basis at the time of filing." Supp. Brief at 5;

---

[6] Petitioner supports his assertion by citing *Tellez-Garcia, Capra, Jahn, Russell*, and *Parker*, all which resulted in compensation or settlement. Supp. Brief at 5. However, as respondent noted, petitioner fails to recognize that all the cited cases are distinguishable, having a common fact not present in his own. Response to Supp. Brief at 5. Even where there was limited delay in seeking medical care, all the petitioners in the cited cases consistently associated their pain with the receipt of the vaccination and at the site of the vaccination. *See Tellez-Garcia v. Sec'y of Health & Human Servs.*, No. 17-816V, 2019 WL 5704796, at *2-3 (Fed. Cl. Spec. Mstr. Oct. 9, 2019); *see Capra v. Sec'y*

Reply at 3. While incorrect vaccine records do occur and do not always extinguish the reasonable basis of a claim, there must be evidence to support that a vaccine record is indeed incorrect because contemporaneous medical records are presumed to be accurate and complete. *Cucuras v. Sec'y of Health & Human Servs.,* 993 F. 2d. 1525, 1528 (Fed. Cir. 1993). Contemporaneous medical records are afforded this presumption based on the linked proposition that (i) sick people visit medical professionals; (ii) sick people honestly report their health problems to those professionals; and (iii) medical professionals record what they are told or observe when examining their patients in an accurate manner. *Sanchez v. Sec'y of Health & Human Servs.*, No. 11-685V, 2013 WL 1880825, at *2 (Fed. Cl. Spec. Mstr. Apr. 10, 2013); *Cucuras v. Sec'y of Health & Human Servs.,* 26 Cl. Ct. 537, 543 (1992), *aff'd,* 993 F. 2d. 1525 (Fed. Cir. 1993). Contemporaneous medical records are also afforded more weight than petitioner affidavits created after the fact. *See Gerami v. Sec'y of Health & Human Servs.*, No. 12-442V, 2013 WL 5998109, at *4 (Fed. Cl. Spec. Mstr. Oct. 11, 2013) (finding that contemporaneously documented medical evidence was more persuasive than the letter prepared for litigation purposes), *mot. for rev. denied*, 127 Fed. Cl. 299 (2014). Furthermore, a petitioner's statement is not "objective" for purposes of evaluating reasonable basis and cannot alone support the feasibility of a claim or reasonable basis. *See, e.g., Chuisano*, 116 Fed. Cl. at 291; *Foster v. Sec'y of Health & Human Servs.*, No. 16-1714V, 2018 WL 774090, at *3 (Fed. Cl. Spec. Mstr. Jan. 2, 2018). As such, despite petitioner affirming that the vaccine record is incorrect, petitioner's vaccine record is presumed to be accurate. Evidence beyond petitioner's own statement is necessary to establish a reasonable basis for petitioner's claim that the September 29, 2016 vaccine, documented as administered in his *right* arm, led to a SIRVA in his *left* arm. Petitioner failed to provide objective evidence at the time of filing, or anytime thereafter, that he received the flu vaccination in his left arm.

First, there was no objective evidence available at the time of filing, other than petitioner's word, that he received the September 29, 2016 flu vaccine in his left arm. At his October 18, 2016 primary care appointment for left shoulder pain with Dr. Kenney, petitioner made no mention of the flu vaccine or of the flu vaccine being administered in his left shoulder. He instead associated his left shoulder pain with strength training. He similarly associated his shoulder pain with strength training at physical therapy on October 24, 2016, with no mention of a left shoulder flu vaccine. Pet. Ex. 2 at 41; Pet. Ex. 3 at 2. At physical therapy on November 23, 2016, petitioner again did not associate his left shoulder pain to a flu vaccine in his left arm. Pet. Ex. 2 at 88-89. Petitioner returned to Dr. Kenney on November 28, 2016 for unrelated medical issues and did not mention pain associated with the receipt of the flu vaccination. *Id.* at 36-38. In December of 2016, petitioner began a series of allergy shots in both arms with Dr. Kenney's practice. *Id.* at 125-130. The record does not reflect petitioner mentioning any problems associated with the receipt of a flu vaccine in his left shoulder. Petitioner then received a hepatitis A vaccine in his left shoulder on January 12, 2017 at Dr. Kenney's practice. Petitioner did not report pain related to the flu vaccine or that the flu vaccine was administered in his left shoulder. *Id.* at 36. On February 6, 2017, petitioner presented to Dr. Panitch, reporting left shoulder pain that began in October of 2016. Still petitioner

---

*of Health & Human Servs.*, No. 18-129V, 2019 WL 3717951, at *4 (Fed. Cl. Spec. Mstr. Apr. 26, 2019); *see Jahn v. Sec'y of Health & Human Servs.*, No. 18-0613V, 2019 WL 7753747, at *3 (Fed. Cl. Spec. Mstr. Sept. 17, 2019); *see Russell v. Sec'y of Health & Human Servs.*, No. 18-457V, 2019 WL 6139502, at *2 (Fed. Cl. Spec. Mstr. Sept. 10, 2019); *see Parker v. Sec'y of Health & Human Servs.*, No. 15-1331V, 2016 WL 3443929, at *1-2 (Fed. Cl. Spec. Mstr. May 13, 2016). Here, petitioner did not immediately or consistently attribute his left shoulder pain to the vaccination or the alleged site of vaccination. He did not report a flu vaccine in his left arm until five months after vaccination despite visits to his primary care physician, physical therapist and a new physician all for his left arm.

10

did not attribute his pain to the flu vaccine and denied any trauma to the shoulder. Petitioner thereafter presented to Dr. Marcelli on February 23, 2017, nearly five months after vaccination, and for the first time reported that his left shoulder pain could be associated with a flu vaccine he received in that shoulder in September or October 2016. [7] He made no mention of the series of December 2016 allergy shots he received in his left arm or the January 2017 hepatitis A vaccination he received in his left arm. He also made no mention of the strength training exercises, which he previously reported to Dr. Kenney and his physical therapist, to Dr. Marcelli. *See* Pet. Ex. 2 at 122.

While Dr. Marcelli's record documents a report of a flu shot in petitioner's left shoulder, subsequent narratives provided by petitioner are not necessarily afforded the same weight as contemporaneous records. *See Castaldi v. Sec'y of Health & Human Servs.*, No. 09-300V, 2014 WL 3749749, at *11 (Fed. Cl. Spec. Mstr. June 25, 2014) ("the weight afforded to [the records of treating physicians] depends on whether the physician is noting her own observations or merely recording statements made by the patient"), *mot. for rev. denied*, 119 Fed. Cl. 407 (2014). Here, petitioner's February 23, 2017 report is not afforded the weight given to the records made by his primary care physician, Dr. Kenney, or his physical therapist. Petitioner's report to Dr. Marcelli, a new physician, came nearly five months after vaccination and after petitioner learned of SIRVA injuries. Furthermore, petitioner merely suggested his pain may have been from the flu vaccine, remaining uncertain of when the pain began or what caused it. A medical record that mentions a petitioner-provided report of a previous vaccine possibly causing shoulder pain, months after the vaccination, when all other medical records between the date of vaccination and petitioner's report contradict that report, does not provide objective evidence to confer reasonable basis for the claim. The February 23, 2017 record carries little but a crumb of evidentiary weight.

Second, the evidence available after filing did little to support petitioner's claim. On August 19, 2019, petitioner filed a May 23, 2018 letter from Dr. Kenney. Dr. Kenney wrote that petitioner was seen on September 29, 2016 and was given a flu vaccine. She wrote that the record documents administration of the vaccination in petitioner's right arm, but Mr. Randall disagrees. Dr. Kenney's letter did not address whether the vaccine was in-fact administered in petitioner's left arm. As respondent noted, "petitioner's doctor appears unwilling to amend the medical record." Response to Supp. Brief at 6. The letter from Dr. Kenney, created and filed after the filing of the claim, did not provide any objective evidence of vaccination in petitioner's left arm.

Additionally, petitioner's October 14, 2016 email exchange with co-worker Raymond Curtis provided little by way of objective evidence to establish reasonable basis. On August 19, 2019, petitioner filed a "recently discovered" email exchange and affirmed that he previously had not thought of, found, or provided counsel with this email because they were not accessible locally on his computer. *See* Pet. Ex. 16 at 1. In the email exchange, petitioner advised Mr. Curtis that he had an appointment for left shoulder pain. Mr. Curtis inquired what was going on with petitioner's left shoulder and petitioner replied, "Not sure really, only thing out of the day to day was a flu shot

---

[7] The billing records submitted with petitioner's Motion for Fees document that petitioner first contacted counsel regarding his vaccine injury claim on February 2, 2017; it appears that he did not speak with anyone at that time. Motion for Fees, Ex. A at 1. The billing records then document telephone calls with petitioner regarding his medical status from counsel's office on February 14, 2017. *Id.* Petitioner thereafter visited Dr. Marcelli on February 23, 2017, for the first time suggesting that his shoulder pain could have been from a flu vaccine administered in his left shoulder.

11

in that shoulder end of September." Pet. Ex. 13 at 1. While this email may reflect some documentation to support petitioner's allegation that he received the vaccine in his left arm, it is not afforded the same presumption of accuracy or weight given to contemporaneous medical records. Petitioner's contemporaneous medical records do not mention vaccination in his left shoulder or pain associated with the receipt of that vaccination. Eight days after his September 29, 2016 flu vaccination at Dr. Kenney's practice, petitioner returned to receive a hepatitis B vaccination on October 7, 2016—he did not mention any shoulder pain from the flu vaccination just a week prior. *See* Pet. Ex. 2 at 44. Only four days after his email correspondence with Mr. Curtis, petitioner presented to Dr. Kenney on October 18, 2016 and reported three weeks of left shoulder pain associated with strength training exercises. He did not associate his pain to a vaccination site and did not mention his flu vaccination at all. *See* Pet. Ex. 2 at 41. Similarly, when petitioner presented for physical therapy on October 24, 2016, he reported shoulder pain for three to four weeks, "potentially from introduction of a new strength training" program. Pet. Ex. 3 at 2. The email petitioner submitted, much after the filing of the claim, is insufficient when weighed against the consistent and contemporaneous medical records.

Petitioner is ultimately left only with his affirmation that the vaccine record is incorrect and his assertion that he "always request[s] the influenza vaccination be performed on [his] left shoulder" to support his claim that the vaccine record is incorrect. Pet. Ex. 6 at 1; Pet. Ex. 10 at 1. Not only are petitioner's own statements not objective evidence for consideration under reasonable basis, petitioner's assertion is seemingly inconsistent. Petitioner affirmed that he always requests flu vaccinations in his left arm to avoid soreness in his dominant right arm, yet petitioner's medical record consistently documents injections in both arms. On July 6, 2016, petitioner received an intramuscular hepatitis A vaccination in his right deltoid. Pet. Ex. 2 at 57. Further, eight days after the allegedly causal flu vaccine, on October 7, 2016, petitioner presented and received an intramuscular hepatitis B vaccination in his right deltoid, his dominant arm. *Id.* at 44. Between December 7, 2016 and February 17, 2017 petitioner underwent twenty-eight subcutaneous allergy shots in both right and left arms. *Id.* at 125-127. Petitioner's inconsistent statements do not provide objective evidence to support a finding that he received the flu vaccination in his left arm.

Petitioner's claim was filed with an allegedly incorrect vaccine record yet no evidence to cure that defect was sought prior to the filing of the petition. After several status conferences were held to discuss the need for additional evidence to support petitioner's claim that he received the flu vaccine in his left arm, petitioner produced the email correspondence with Mr. Curtis and the letter from Dr. Kenney. Petitioner then dismissed his claim. Altogether, the evidence petitioner submitted is insufficient when weighed against the consistent contemporaneous medical records. The lack of objective evidence of vaccination in the allegedly affected arm completely eroded the feasibility of petitioner's claim both before and after filing of the petition.

**B.     Petitioner's Alleged SIRVA Injury is Inconsistent with Contemporaneous Medical Records**

Even if it were accepted that petitioner received the flu vaccination in his left arm, there was a lack of objective evidence to support the remaining Table SIRVA elements: no history of prior pain or injury, onset within 48 hours, pain limited to the shoulder, and no alternate causes. *See* 42 C.F.R. § 100.3(a)(XIV)(B); *see* 42 C.F.R. § 100.3(c)(10)(i-iv). Again, while petitioner need

12

not show a certain likelihood of success in all elements, reasonable basis requires that the objective evidence in the record not be so contrary that a feasible claim is not possible.

In explaining why there was a reasonable basis, petitioner argued that the record shows "(1) he had no prior history of shoulder injury; (2) his initial visit placed the onset of symptoms around the time of vaccination; (3) he was diagnosed with a SIRVA-like injury with pain and reduced range of motion limited to the shoulder area in which he alleged the vaccine was administered; and (4) no other condition or abnormality would explain his symptoms." Reply at 3. However, petitioner's argument ignores the fact that no record documents onset within 48 hours; records also document that his pain was not limited to the vaccinated shoulder, that he attributed pain to strength training, and that imaging showed degenerative pathology. Not only did petitioner lack proof of vaccination in his left arm, petitioner failed to provide objective evidence to support the remaining Table SIRVA elements to support his claim.

### 1. Petitioner Never Reported Onset Occurring Within 48 Hours of Vaccination

The petition and petitioner's affidavit alleged immediate onset of pain due to his flu vaccination, yet his records consistently documented otherwise. Despite returning to Dr. Kenney's practice eight days after his allegedly causal flu vaccine to receive a hepatitis B vaccination, petitioner did not mention any pain or discomfort from his recent flu vaccine. In neither of the emails to Mr. Gallagher or Mr. Curtis did petitioner mention when his pain began or that he associated the onset of pain with the receipt of a flu vaccination. Neither at petitioner's October 18, 2016 appointment with Dr. Kenney nor at his October 24, 2016 visit with the physical therapist did petitioner associate his pain with the receipt of a flu vaccination or mention that his shoulder pain began within 48 hours after his vaccination. Instead, the onset of his shoulder pain was associated with strength training. Petitioner also received a hepatitis A vaccination in his left arm in January of 2017. There is no record that petitioner mentioned at that time any immediate adverse reaction or shoulder pain associated with the September 29, 2016 flu vaccine. Further, at his February 6, 2017 appointment with Dr. Panitch, a visit to specifically address his shoulder pain, petitioner did not mention the flu vaccine or place onset of shoulder pain within 48 hours of the vaccination. Even when petitioner did suggest that the flu vaccine could have caused his shoulder pain, nearly five months after vaccination at his visit with Dr. Marcelli on February 23, 2017, he did not provide details regarding when the pain began. Petitioner did not report onset immediately following or within 48 hours of the flu vaccine; rather, petitioner reported the pain was "present since September or October." Petitioner provided no specifics regarding the timeframe for onset of pain, the location of the pain, or any details that would evidence an onset of pain associated with his receipt of the flu vaccination.

Routine reviews of shoulder injury claims in the Vaccine Program show that, while a petitioner may not be aware that injuries can arise from the administration of a vaccine or may not seek medical care immediately for such injuries, petitioners are typically aware of when the pain in their arm began. In this case, petitioner sought care shortly after receipt of his allegedly causal vaccination but never associated his left shoulder pain with the receipt of the flu vaccine. He could only provide a general timeframe of three to four weeks prior to October 18, 2016 and October 24, 2016, respectively, and associated his onset of pain with exercise. Even when petitioner associated onset with the flu vaccine, he was not aware of when the pain began, only that it was present "since September or October."

13

Aside from his statements made for litigation, petitioner never mentioned pain within 48 hours of his allegedly causal flu vaccine or pain associated with the receipt of the flu vaccine in general. As petitioner's own statements are not objective evidence under reasonable basis analysis, there was no evidence that the onset of his pain was within 48 hours of vaccination or was even associated with the flu vaccination.

### 2. Petitioner Consistently Associated Shoulder Pain with Strength Training

Petitioner's repeated and documented association of his shoulder pain with exercise prior to his flu vaccine further counters any reasonable basis for his claim. When petitioner presented to Dr. Kenney for left shoulder pain on October 18, 2016, he did not relate his pain to the flu vaccine or that it occurred following his flu vaccination. Rather, he reported that he was lifting weights prior to the onset of his shoulder pain. Similarly, when he presented to physical therapy on October 24, 2016, he associated his shoulder pain with the introduction of new strength training, and, based on the history he reported at physical therapy, a September 25, 2016 onset date was documented into the record.

As detailed in the section addressing petitioner's incorrect vaccination record, the report of a flu vaccine in petitioner's left arm to Dr. Marcelli carries little evidentiary weight, particularly as petitioner provided no definitive association between his left shoulder pain and receipt of the flu vaccination. Petitioner's report that his shoulder pain may be related to a flu vaccine, which was documented to have been administered in the opposite shoulder, nearly five months after vaccination during which he consistently associated his shoulder pain with exercise, does not provide objective evidence sufficient to establish reasonable basis.

### 3. Petitioner's Pain was Not Limited to the Shoulder and Imaging Showed Degenerative Pathology

Petitioner's record documented that petitioner's pain was not limited to his shoulder and provided alternative causes for petitioner's shoulder pain. Petitioner's first complaint of shoulder pain to Dr. Kenney on October 18, 2016, included shoulder pain that radiated into the left side of his neck. While he reported no neck or other joint pain to Dr. Marcelli on February 23, 2017, petitioner again reported neck pain when seeking care from a chiropractor just six days later, on March 1, 2017. As mentioned above, petitioner consistently associated his shoulder pain with strength training exercises. Imaging of his left shoulder from his visits with Dr. Marcelli also showed degenerative pathology, and post-surgical findings included acromioclavicular joint arthritis.

Even though the evidentiary standard for reasonable basis is much lower than that required for causation, petitioner failed to provide any objective evidence to support a reasonable basis for filing his claim. Altogether, petitioner failed to provide objective medical evidence that the September 29, 2016 flu vaccine was administered in his left arm, leading to the alleged SIRVA. Even though petitioner was provided ample time to procure and file further evidence, petitioner was unable to do so. During both the June 18, 2019 and the November 13, 2019 status conferences, the undersigned advised the parties of the limited evidence regarding vaccination and onset. *See* Scheduling Order, ECF No. 22; *see* Scheduling Order, ECF. No. 28. Petitioner's counsel

14

acknowledged the discrepancies between what petitioner was alleging and the contemporaneous records, as well as the significant difficulties in the case. Scheduling Order at 2, ECF No. 22; Scheduling Order at 2, ECF. No. 28. After both status conferences, petitioner was provided time to review evidence and inform the Court on how he intended to proceed. Despite being given the opportunity to provide further objective evidence regarding vaccination and onset, petitioner was only able to provide the October 14, 2016 email correspondence with Mr. Curtis, the non-committal May 23, 2018 letter from Dr. Kenney, and the similarly non-committal email from the COO of Strive Physical Therapy. When the insufficiency of such records was discussed, petitioner subsequently dismissed his claim. Petitioner filed his claim with a lack of objective evidence relating the September 29, 2016 flu vaccine to the alleged left shoulder SIRVA and failed to provide objective evidence thereafter to support a feasible SIRVA claim.

### III. Conclusion

Petitioner's claim lacked a reasonable basis at the time of filing and did not gain reasonable basis thereafter. At the time of filing, petitioner submitted all his relevant medical records alleging a SIRVA in his left arm. The medical records clearly indicated that the allegedly causal flu vaccine was administered in petitioner's right arm. Despite this discrepancy, petitioner filed his claim with no objective proof that the vaccination was administered in his left arm. Further, petitioner's contemporaneous medical records were inconsistent with a SIRVA claim or any claim that his left shoulder pain was associated with receipt of vaccination in that arm. When given opportunities to cure these deficiencies, petitioner filed little to cure the deficiencies that existed and ultimately dismissed his claim. Based on the objective evidence available to the petitioner at the time of the filing of his claim on March 27, 2018, there was no reasonable basis for petitioner's claim, and the claim did not gain reasonable basis thereafter.

In accordance with the foregoing, petitioner's Motion for Attorneys' Fees and Costs is **DENIED**. The Clerk of the Court is directed to enter judgment in accordance with this Decision.[8]

**IT IS SO ORDERED.**

**s/ Mindy Michaels Roth**
Mindy Michaels Roth
Special Master

---

[8] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.